**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 23, 2019

**BY ECF**
Honorable Colleen McMahon
Chief United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007

      Re:    <u>United States v. Peter Gotti</u>, 02 Cr. 743 (CM)

Dear Chief Judge McMahon:

      The Government respectfully submits this letter in response to defendant Peter Gotti's motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 412.) Gotti—who is currently serving a 25-year sentence from this Court—seeks early release based on his health. Gotti is currently set to be released in 2032.

      For the reasons set forth below, Gotti's motion should be denied. Gotti has not met his burden of proving that his medical conditions meet the criteria for "extraordinary and compelling reasons" justifying early release under 18 U.S.C. § 3582. Gotti does not have a terminal illness, is receiving appropriate treatment for the ailments he does have, and is able to exercise a high degree of self-care. Furthermore, Gotti remains a substantial danger to the community, and—given the seriousness of his crimes and the absence of any meaningful acceptance of responsibility—the factors set forth in 18 U.S.C. § 3553(a) continue to weigh strongly against a sentencing reduction.

**I.  Background**

    **A.  <u>The Offense Conduct</u>**

      From at least 1999 up to his conviction in 2002, Peter Gotti was the Acting Boss of the Gambino Crime Family of La Cosa Nostra (the "Gambino Family" or "Family"), one of the most powerful and violent organized crime organizations in New York. In the words of Judge Richard Casey, who presided over the trial in this case, the "vicious business of the Gambino family is to terrorize, extort, maim and murder in the pursuit of illegal profits." (Tr. Sent'g, Doc. No. 308, 23:7–9). During his tenure as Acting Boss, Gotti "stood atop this organization," "profited from the widespread illegal activities of the Gambino family," and exercised the "authority to decide life or death." (<u>Id.</u> 22:13–23:10.)

The evidence at trial showed exactly how Gotti used his leadership of the Gambino Family to order the death of others and enrich himself.

### 1. The Conspiracy to Murder Salvatore ("Sammy the Bull") Gravano

In 1999, Gotti ordered two Gambino Family subordinates, Eddie Garafola and Thomas Carbonara, to hunt down and kill Salvatore ("Sammy the Bull") Gravano, the former Underboss of the Family.  Gotti sought to have Gravano murdered because Gravano cooperated in the prosecution of numerous high-level Gambino Family members, including John Gotti, Sr., the defendant's brother and former Boss of the Family.

At the defendant's direction, Garafola and Carbonara took extensive steps to track down and kill Gravano.  They created fake aliases, changed their physical appearances, and took two trips to the West Coast and Arizona, where Gravano was believed to be living.  During the trips, Garafola and Carbonara purchased firearms, conducted surveillance, and photographed locations where Gravano might be found.  They discussed specific ways to kill Gravano, including detonating a remote control bomb and recruiting a Gambino Family marksman to shoot Gravano with a high-powered rifle.  Ultimately, the plan to murder Gravano was aborted because Gravano was arrested and taken into law enforcement custody in 2000 on drug charges.

Not only did Gotti issue the order to kill Gravano, he financed the plot.  The trial evidence showed that, after the plan was called off, Gotti was upset because he had spent approximately $70,000 on expenses that Garafola and Carbonara incurred when planning the murder.

### 2. Construction Industry Extortion

From the 1990s through 2002, Gotti was a member of the Gambino Family's Ruling Panel and/or its Construction Panel, which oversaw the Family's criminal activities relating to labor unions and the construction industry.  During that period, the Gambino Family extorted numerous construction companies and contractors by charging a "mob tax."  If a contractor paid the Family cash and/or provided "no-show" jobs for Family members, the Family would use its criminal influence to prevent unions from objecting if the contractor hired non-union workers.  If, on the other hand, a contractor or union member refused to go along with the shakedown, the Family would threaten strikes, work stoppages, or even violence.

Gotti personally benefitted from the Gambino Family's extortion of the construction industry.  The trial evidence showed, among other things, that Gotti received $10,000 every month or every other month from a businessman at a construction company and that Gotti's son was given a union job.

### B. Procedural History

On December 22, 2004, following a seven-week jury trial, Gotti was found guilty of every count he was charged with: (1) racketeering, in violation of 18 U.S.C. § 1962(c); (2) racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); (3) conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5); and (4) extortion, in violation of 18 U.S.C. § 1951.

On July 27, 2005, Gotti was sentenced before Judge Casey. According the Presentence Investigation Report ("PSR"), Gotti had the following medical conditions at the time: blindness of the left eye, glaucoma, irregular heartbeat, heart conditions, arthritis, gout, and thyroid conditions. The Probation Office recommended a sentence of 840 months' imprisonment. The defense urged the Court to impose a lower sentence based on Gotti's health. (Tr. Sent'g 8:19–9:13.) The defense further described Gotti as "not a particularly violent, not a bad man" and argued that there was "no need to protect the public from what is essentially an elderly and infirm man." Gotti declined to make any statement. (Id. 11:4–10; 12:14–13:1.)

Judge Casey sentenced principally Gotti to 300 months' imprisonment. Addressing the defense's arguments about Gotti's health, Judge Casey noted that "the Bureau of Prisons treats inmates with similar and more serious ailments and has adequate facilities and resources to treat the defendant's medical conditions in a just and humane manner." (Tr. Sent'g 23:14–18.) Judge Casey specifically rejected the notion that Gotti's age and health diminished the threat he posed to the community, finding that Gotti, "like the other leaders of the Gambino family, need only to direct subordinates to commit the criminal acts from which he profited." (Id. 24:1–9.)

The Court ordered the sentence to be served consecutively with a 112-month sentence Gotti was then serving for convictions in the Eastern District of New York. See United States v. Gotti, 02 Cr. 606 (FB) (E.D.N.Y.). Gotti appealed, and the Second Circuit affirmed on May 30, 2007.

Gotti is presently serving his sentence at the Federal Medical Center at Butner, North Carolina ("FMC Butner"), and is set to be released in May 2032.[1] According to an estimate provided by the BOP, Gotti completed his Eastern District of New York sentence—and began serving the sentence imposed in this case—in May or July 2010.

## II. Gotti's Application for Compassionate Release

### A. Request to the Bureau of Prisons

On February 22, 2019, Gotti submitted an administrative request (the "Inmate Request") to the Bureau of Prisons ("BOP"), asking the BOP to file a motion for reduction of sentence on his behalf. In the Inmate Request, which is annexed hereto at Exhibit A, Gotti listed the following medical conditions:

> (1) cardiomyopathy with a severe eccentric mitral valve regurgitation; (2) first degree left bundle branch block; mild to moderate left ventricular global heart dysfunction with an ejection factor; (3) atrial fibrillation [sic]; (4) likely cancerous growth in at least one of [his] lungs; (5) hypertension cardiovascular disease; (6) arterial hypertension; (7) hypothyroidism; (8) cardiac arrythmia [sic]; (9) congestive heart failure; (10) chronic obstructive pulmonary disease; (11) early stage renal insufficiency; (12) gout; (13) osteoarthritis; (14) gastric reflux;

---

[1] The Government has been advised by the Bureau of Prisons that, in light of changes in the calculation of good time credit enacted in the First Step Act, Gotti's release date may be recalculated. See 18 U.S.C. § 3624(b). The precise date of Gotti's release does not affect any of the issues raised by the instant motion.

(15) bilateral glaucoma; (16) rhematoid [sic] arthritis; (17) hyper lipidemia, (18) enlarged prostate; (19) total blindness in left eye; (20) hearing loss; (21) anticoagulant therapy; and (22) borderline anemia.

(Ex. A.)

Gotti's Inmate Request did not specify the criteria under which Gotti was seeking a reduction of sentence.[2] The BOP interpreted the Inmate Request to seek relief under either the "Terminal Medical Condition" or the "Debilitated Medical Condition" criteria established by the BOP.

On March 19, 2019, the BOP issued a decision, annexed hereto as Exhibit B, determining Gotti to be ineligible for relief under the "Terminal Medical Condition" criteria because he was "capable of adequately performing at a sufficient level" and his life expectancy was "indeterminate." (Ex. B.)[3] Gotti was advised of his right to administratively appeal this decision. Gotti did not appeal.

On May 10, 2019, the BOP issued a decision, annexed hereto at Exhibit C, determining Gotti to be ineligible for relief under the "Debilitated Medical Condition" criteria, on the following grounds:

> Mr. Gotti, age 79, has a history of hypothyroidism, hyperlipidemia, gout, glaucoma, left eye blindness, hypertension, ischemic cardiomyopathy, heart failure, chronic obstructive pulmonary disease, esophageal reflux, and chronic atrial fibrillation. He uses a pacemaker and a manual wheelchair, but is capable of self-propelling and transferring independently. He remains independent with his activities of daily living and instrumental activities of daily living. As Mr. Gotti is able to independently perform self-care, he does not meet the criteria for a [reduction in sentence] under section 3(b), and his [reduction-in-sentence] request is denied.

(Ex. C.)[4]

---

[2] The form that Gotti filled out instructed him to circle one of "Terminal Medical Condition," "Debilitated Medical Condition," and/or "Elderly with Medical Conditions." Gotti did not circle any option.

[3] Under BOP regulations, a "Terminal Medical Condition" means a "terminal, incurable disease" resulting in a life expectancy of "eighteen (18) months or less." See Program Statement 50.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) ("PS 50.50"), at 4, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

[4] Under BOP regulations, a "Debilitated Medical Condition" requires that the defendant be either "[c]ompletely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair" or "[c]apable of only limited self-care and . . . confined to a bed or chair more than 50% of waking hours."  PS 50.50, at 5.

### B. Instant Motion

On June 28, 2019, Gotti filed the instant motion seeking a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) based on his health. The motion lists the same ailments as the Inmate Request, except that, instead of "anticoagulant therapy," the motion lists "early onset dementia." (Doc. No. 412 ¶ 3(V).)

The motion does not identify a terminal illness, does not elaborate on any of the claimed medical conditions, does not attach any medical records, and does not address the level of self-care that Gotti is capable of at FMC Butner. Nor does the motion make any mention of Gotti's leadership of the Gambino Family or his culpability in the conspiracy to kill Gravano and the extortion of the construction industry.

### III. Applicable Law

Under 18 U.S.C. § 3582:

[T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or

. . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).[5]

Because the statute refers to the applicable policy statement in the Sentencing Guidelines, that policy statement furnishes the substantive criteria for relief. See Dillon v. United States, 560 U.S. 817, 827 (2010); 28 U.S.C. § 994(t).

---

[5]  A defendant may also qualify for reduction of sentence if the defendant "is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned." 18 U.S.C. § 3582(c)(1)(A)(ii). While Gotti's motion refers to this provision, he does not qualify because he did not receive a sentence under 18 U.S.C. § 3559(c), which provides for mandatory life imprisonment under certain circumstances. Gotti also has not served at least 30 years in prison.

The policy statement, which appears at § 1B1.13 of the Guidelines, provides that a reduction of sentence is permitted if: "extraordinary and compelling reasons warrant the reduction," U.S.S.G. § 1B1.13(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," id. § 1B1.13(2); and "the reduction is consistent with this policy statement," id. § 1B1.13(3). Like the statute, § 1B1.13 requires consideration of the 18 U.S.C. § 3553(a) factors to the extent they are applicable. Id.

The Application Notes of § 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. As relevant here, an extraordinary and compelling reason might exist under the following circumstances:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I)   suffering from a serious physical or medical condition,

(II)  suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13, Application Note 1.

As the movant, the defendant bears of the burden of proving that he is entitled to relief under 18 U.S.C. § 3582. See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); United States v. Clarke, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) (same).

## IV. Discussion

Gotti is not entitled to a reduction in sentence because neither his medical condition nor his age meet the threshold criteria for "extraordinary and compelling reasons" justifying relief. Furthermore, Gotti remains a significant danger to the community and the 18 U.S.C. § 3553(a) factors weigh strongly against reducing his sentence.

### A. Absence of Extraordinary and Compelling Reason

To qualify for relief, Gotti must prove "extraordinary and compelling reasons" justifying a reduction in sentence. He cannot show that he qualifies for relief under either the "Medical Condition of the Defendant" or "Age of the Defendant" criteria set forth in Application Note 1 of § 1B1.13.

#### 1. Medical Condition

As discussed, a defendant's medical condition may justify a sentencing reduction if (a) the defendant has a "terminal illness" or (b) if the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and [is a condition] from which he or she is not expected to recover." U.S.S.G. § 1B1.13, Application Note 1(A).

Gotti does not have a terminal illness, defined as "a serious and advanced illness with an end of life trajectory," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." U.S.S.G. § 1B1.13, Application Note 1(A)(i). Many of Gotti's claimed conditions are heart or lung conditions, which, according to the BOP, are adequately treated and monitored.[6] (See Ex. B.) Gotti has offered no proof to rebut the BOP's determination. As to Gotti's claim that he has a "likely cancerous growth in at least one of [his] lungs," there is no mention of lung cancer in the BOP's decisions. The BOP has advised the Government that there is no diagnosis of lung cancer in the BOP's medical records.

Gotti also has not shown that he has a condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." To the contrary, a BOP memorandum, annexed hereto as Exhibit D, indicates that Gotti is capable of a high degree of self-care:

> Mr. Gotti is independent with all aspects of his Activities of Daily Living (ADLs) and Instrumental Activities of Daily Living (IADLs) including bathing, dressing, grooming, toileting, feeding, using the phone, computer, and managing his TRULINCs account, and navigating the correctional environment. Mr. Gotti does use a manual wheelchair [for] mobility, and he is capable of self-propelling and transferring in and out of [it] independently.

---

[6] Some of the ailments that Gotti lists—including gout, arthritis, gastric reflux, hearing loss, vision impairment, and enlarged prostate—may affect his qualify of life, but cannot qualify as "extraordinary and compelling" under any rubric.

(Memorandum from Jeffery D. Allen, M.D., Medical Director, Federal Bureau of Prisons, dated May 7, 2019 (annexed hereto as Ex. D).)

Accordingly, Gotti does not qualify for relief under the "Medical Condition of the Defendant" criteria set forth in U.S.S.G. § 1B1.13, Application Note 1(A).

**2. Age**

To qualify for a reduction of sentence based on his age, a defendant must (i) be "at least 65 years of age," (ii) be experiencing "a serious deterioration in physical or mental health because of the aging process," and (iii) have served "at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, Application Note 1(B). Gotti does not meet the second or third conditions.

For the reasons discussed above, Gotti has not demonstrated a "a serious deterioration in physical or mental health." His ailments are being treated and monitored by the BOP, and he is capable of self-care and independent living at FMC Butner.

Gotti also has not served either 10 years or 75 percent of his term of imprisonment. While Gotti has been in federal custody since June 2002, he did not begin serving his sentence in this case until May or July 2010, when he completed a prior 112-month term of imprisonment from the Eastern District of New York.[7] Accordingly, Gotti has served less than ten years and less than half of his 25-year sentence.

**B. Danger to the Community**

Notwithstanding his age and health, Gotti poses a substantial danger to the community and, for that independent reason, is ineligible to be released. See U.S.S.G. § 1B1.13(2).

Gotti headed an organization that Judge Casey described as being in the "vicious business" of "terroriz[ing], extort[ing], maim[ing] and murder[ing]." (Tr. Sent'g 23:7–10.) In his capacity as Acting Boss, Gotti had "absolute authority to set policy, enforce the rules, and mete out punishment," including the power to "choose who will be killed to protect the family." (Id. 22:1–12.) Gotti did not let this authority sit idle: he ordered the death of Gravano and discussed the murder of others. (Id. 22:13–22.) The public safety risk posed by Gotti's release would be considerable.

Gotti argues that he is incapable of his violence due to his age and medical condition. Judge Casey rejected that argument and the Court should reject it again. The danger posed by a Gambino Family leader like Gotti is not that he will personally engage in acts of violence, but that he can command others to do so. (Tr. Sent'g 24:1–9 ("[B]osses don't commit violence themselves, they have subordinates to do their bidding.").) Indeed, that is what happened when Gotti ordered

---

[7] According to the BOP, the calculation of when Gotti completed his Eastern District of New York sentence varies depending on whether the BOP uses the pre- or post-First Step Act method of calculating good time credit. For purposes of this motion, the difference is immaterial because, either way, Gotti has not yet served ten years on the sentence imposed by this Court.

Gambino Family soldiers to murder Gravano. Judge Casey's finding that "[t]he public will be best protected from the defendant by putting him in jail for a very long time" remains true today. (Id. 24:7–13.)

### C. 18 U.S.C. § 3553(a) Factors

The sentencing factors set forth at 18 U.S.C. § 3553(a)—which the Court should consider in evaluating a motion under 18 U.S.C. § 3582(c)(1)(A)—weigh heavily against releasing Gotti.

Gotti headed one of the most vicious and violent organized crime organizations in New York for a period of years. During that time, the Gambino Family earned millions of dollars from extorting the construction industry, and Gotti personally ordered the death of a Government cooperator, Gravano. In the words of Judge Casey, "[t]he integrity of our justice system demands a sentence sufficient to punish the defendant for his crimes and to deter others who might consider following in his path." (Tr. Sent'g 23:22–25.)

Reducing Gotti's sentence—when he has served less than half of it—is especially unwarranted because Gotti has never shown real acceptance of responsibility. Gotti declined to make a statement at sentencing and his attorney described him as "not a bad man." (Tr. Sent'g 12:14–19.) While the instant motion asserts that Gotti has "reevaluat[ed] his thinking and reconsider[ed] his moral values," not once does it mention Gotti's role as the Acting Boss of the Gambino Family (or even the existence of the Gambino Family), his role in conspiring to murder Gravano, or his role in siphoning millions of dollars away from the construction industry. (Doc. No. 412.)

### V. Conclusion

The sentence-reduction mechanism in 18 U.S.C. § 3582(c)(1)(A) is reserved for defendants who can demonstrate truly "extraordinary and compelling" reasons and whose release would be consistent with § 3553(a) and would not harm the public. For any and all of these reasons, Peter Gotti does not qualify and the Government respectfully requests that his motion be denied.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

by: /s/ Jun Xiang
Jun Xiang
Assistant United States Attorney
(212) 637-2289

**CC (BY ECF)**
All Counsel