UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————————————x

UNITED STATES OF AMERICA,

        -against-                            02 CR 743-07 (CM)

PETER GOTTI,

                 Defendant.

—————————————————————————————————x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/29/20

## DECISION AND ORDER DENYING RENEWED MOTION
## FOR COMPASSIONATE RELEASE

McMahon, C.J.:

Peter Gotti was convicted of various federal crimes, including: racketeering; racketeering conspiracy; conspiracy to commit murder in aid of racketeering; and extortion. The Honorable Richard C. Casey sentenced Gotti to 300 months imprisonment, to be served consecutive to a 112-month sentence Gotti was then serving for convictions in the Eastern District of New York. *See United States v. Gotti*, 02 Cr. 606 (FB) (E.D.N.Y.). According to an estimate provided by the Bureau of Prisons ("BOP"), Gotti completed his Eastern District of New York sentence—and so began serving the sentence imposed in this case—in May or July 2010. He is presently serving his sentence at the Federal Medical Center at Butner, North Carolina. His current scheduled release date is May 5, 2032.

Before the Court is Gotti's renewed motion for compassionate release, filed pursuant to 18 U.S.C. § 3582 and the First Step Act. Gotti filed his original compassionate release motion with this Court on June 28, 2019; the Government opposed the motion, and the Court denied the motion on January 15, 2020. (Doc. No. 435). The Government continues to oppose Gotti's release.

The "renewed" motion is denied.

1

## Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing "extraordinary and compelling circumstances" warranting release.[1] Until recently, this Court— and many of my district court colleagues—looked to United States Sentencing Guidelines § 1B1.13 (the applicable Guidelines section for sentencing reductions pursuant 18 U.S.C. § 3582(c)(1)(A)(i)), for guidance on what constituted "extraordinary and compelling circumstances."[2] That changed on September 25, 2020, when the United States Court of Appeals

---

[1] "A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *See, e.g.*, United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992).

[2] The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See* § 1B1.13 comment (n.1). For example, the medical circumstances ground reads as follows:

(A)     Medical Condition of the Defendant.—

for the Second Circuit held that § 1B1.13 is not applicable to a motion brought by a defendant in the district court. *United States v. Brooker* No. 19-32180-CR, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020). The Second Circuit reasoned that the language of § 1B1.13—language that has not been updated since the passing of the First Step Act—addressed only sentencing reduction motions initiated by the Bureau of Prisons. *Id.* In making clear that the district court was not constrained by the narrow grounds for granting compassionate release in § 1B1.13, the Second Circuit declared unequivocally that "district courts have discretion to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release," and that "neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id* at *7. What Brooker did not change, however, is the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must first consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a)

---

(i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

(ii)    The defendant is—

   (I)     suffering from a serious physical or medical condition,

   (II)    suffering from a serious functional or cognitive impairment, or

   (III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1).

3

factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

### Gotti's Failure to Exhaust Administrative Remedies

The Government argues that—notwithstanding Gotti having exhausted his administrative remedies with the BOP in connection with previous compassionate release motion filed in June 2019—he has failed to exhaust his administrative remedies in connection with his latest motion. It is the Government's position that the motion before the Court—labeled by the defendant as a renewed motion for compassionate release—is actually a new motion based on a new argument, never presented to the BOP: Gotti's risk of contracting COVID-19 at FMC Butner, and suffering a severe and possible fatal outcome.

The Government is correct.

While Gotti sought administrative relief in connection with his original, non-COVID-based motion, there is no indication that he made an administrative request in regard to the new argument based on the risk of COVID-19. The Government has represented to the Court that the legal staff at FMC Butner advised the Government on December 7, 2020 that the BOP has not received any administrative sentence reduction request from Gotti since 2019, when he sought relief in connection with his pre-COVID motion.

It is well-settled that a defendant must show administrative exhaustion with respect to the specific basis for relief upon which he is relying. In order to initiate a request for compassionate release, an inmate's administrative request to the BOP must "at a minimum contain . . . [t]he extraordinary or compelling circumstances that the inmate believes warrant consideration." 28 U.S.C. § 571.61(a)(1). These sorts of exhaustion regulations are "common," and courts "regularly ensure against the bypassing of [them] by refusing to consider unexhausted issues."

Sims v. Apfel, 530 U.S. 103, 108 (2000); see Wright & Miller, Fed. Pract. & Proc. § 8364

("Courts frequently declare that, on judicial review, they will not resolve new issues that were

not raised before the agency in the first instance."). Section 3582(c) is no exception: courts have

refused to consider issues that were not presented to BOP for its consideration. *See, e.g., United

States v. Samet*, No. 01 Cr. 216 (CM), Doc. No. 499 (S.D.N.Y. Apr. 9, 2020) (Doc. No. 499)

("Samet undoubtedly exhausted his administrative remedies, but it appears that the Warden

denied Samet's petition long before the COVID-19 pandemic, which means . . . no opportunity

for [BOP] to consider the impact of COVID on Samet's situation."); *see also United States v.

Jenkins*, 2020 WL 1872568, at *1 (D. Neb. Apr. 14, 2020) ("[T]he Court cannot consider a

motion for compassionate release that is based on evidence or arguments that weren't presented

to the Bureau of Prisons first."); *United States v. Mogavero*, 2020 WL 1853754, at *2 (D. Nev.

Apr. 13, 2020) ("Proper exhaustion necessarily requires the inmate to present the same factual

basis for the compassionate-release request to the warden."); *United States v. Valenta*, 2020 WL

1689786, at *1 (W.D. Pa. Apr. 7, 2020) ("To properly exhaust administrative remedies,

therefore, the administrative complaint must raise the same claims asserted in the federal court

filing."). And courts have specifically refused to consider the impact of COVID-19 on a

defendant if that issue was not raised before BOP. *See Jenkins*, 2020 WL 1872568, at *1;

*Mogavero*, 2020 WL 1853754, at *2; *Samet*, No. 01 Cr. 216, Doc. No. 499; *Valenta*, 2020 WL

1689786, at *1. Gotti's case differs from that of Mark Resnick, a case where this Court deemed

the defendant's compassionate release motion exhausted, even though it did not argue COVID-

19, because it was under administrative review during the COVID pandemic, and the BOP was

under orders from the Attorney General to consider COVID vulnerability in assessing

compassionate release petitions. *See United States v. Resnick*, 2020 WL 1651508 (CM).

Accordingly, Gotti's motion is denied for failure to exhaust.

The Merits of Gotti's Present Motion

Post *Brooker*, a court considering an inmate's compassionate release motion based on medical grounds need no longer look to the applicable Application Notes in the Sentencing Guidelines to determine whether the inmates medical condition meets the rigid medical criteria enumerated in the Guidelines that would warrant release. In the context of a compassionate release motion predicated on an inmates poor health and the risk of contracting COVID-19 in a Bureau of Prisons facility, the Court may now recognize the obvious: An inmate (1) in a Bureau of Prisons Facility with a high rate of COVID-19 infections, and (2) who suffers from health conditions found by the Center for Disease Control to place a person at an increased risk of suffering a severe outcome from Covid-19, has met the threshold "extraordinary and compelling" standard warranting compassionate release.

*Gotti's COVID-19 Risk*

Here there is no question that Gotti, is at risk of suffering a severe outcome if he were to contract COVID-19. First and foremost, Gotti is 81 years old—16 years older than the 65 years old threshold set by the CDC. *See* Older Adults, https://www.cdc.gov/ coronavirus/ 2019-ncov/need-extra-precautions/older-adults.html.

Second, Gotti suffers from myriad medical conditions, including congestive heart failure and hypertension, recognized by the CDC and WHO to have "been associated with increased illness severity and adverse outcomes" from COVID–19. *See* CDC, Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID–19), https:// bit.ly/3cjQyRM. *See also* CDC COVID–19 Response Team, Preliminary Estimates of the Prevalence of Selected Underlying Health Conditions Among Patients with Coronavirus Disease

6

2019—United States, February 12–March 28, 2020, at tbl.1, CDC, Morbidity & Mortality
Weekly Report (Apr. 3, 2020) ("Prevalence Report"), at 383, available athttps://bit.ly/34A6RqI
(concluding, "consistent with findings from China and Italy," that "patients with underlying
health conditions and risk factors, including ... hypertension, ... might be at higher risk for severe
disease or death from COVID–19"); World Health Org., Report of the WHO–China Joint
Mission on Coronavirus Disease 2019 (COVID–19), at 12 (Feb. 24, 2020) ("WHO–China
Report") at 12 ("Individuals at highest risk for severe disease and death include ... those with
underlying conditions such as hypertension."). The WHO has found that the mortality rate
among those with hypertension is 8.4%, compared to 1.4% for those otherwise healthy. *Id.*

I therefore find that Gotti has an elevated risk of suffering a negative outcome should he
become infected by COVID-19.

*Butner FMC & COVID-19*

In regard to the risk of contracting COVID-19 at Butner FMC: According to BOP
website, there have been 615 COVID-19 tests administered at Butner FMC since the Pandemic
began, yielding 176 positive results. *See* BOP COVID-19 Dashboard, https://www.bop.gov
/coronavirus/ (last visited December 23, 2020). Currently, there are 3 inmates and 6 staff at
Butner FMC testing positive for the virus. *Id.* [3] The implementation of the Bureau of Prison's
National Multi-Phase Action Plan for combatting COVID-19 (*see BOP COVID-19 Action Plan*,
https://www.bop.gov/ resources/ news/20200313_covid-19.jsp., (periodic updates to plan
omitted)), appears to have had limited effect in controlling the virus at Butner FMC. While
Butner FMC does not have the worst infection rate among the BOP facilities, a person like

---

[3] After dealing with numerous compassionate release motions over the last several months, I have learned that BOP
statistical reporting for a particular facility does not always comport with, and often understates the actual infection
rate at that facility.

7

Gotti—with an elevated risk of suffering a serious outcome from COVID-19—would be better off if he were living in an environment with a lower infection rate.

Thus, Gotti has met his threshold burden of showing an extraordinary and compelling reason to grant him compassionate release.

### The 18 U.S.C. § 3553(a) Factors

The 18 U.S.C. § 3553(a) factors—which the Court must consider in connection with a motion for a sentence reduction, *see* 18 U.S.C. § 3582(c)(1)(A)—continue to weigh heavily against a sentence reduction. Principal among those considerations is "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2) (A-C).

As I said when denying Gotti's original motion for compassionate release:

> A court is not required to reduce a sentence on compassionate release grounds, even if a prisoner qualifies for such reduction because of his medical condition. The First Step Act was drafted using the word "may," not "must." In the end, whether to reduce a sentence is a matter that rests in the discretion of the court. And as a matter of my discretion, I do not believe that Peter Gotti's sentence should be reduced, notwithstanding his compromised medical condition.

> Gotti headed one of the most vicious and violent organized crime organizations in New York for a period of years. During that time, the Gambino Family earned millions of dollars from extorting the construction industry, and Gotti personally ordered the death of a Government cooperator, Gravano. In the words of Judge Casey, "the integrity of our justice system demands a sentence sufficient to punish the defendant for his crimes and to deter others who might consider following in his path." (Tr. Sentencing 23:22–25). Reducing Gotti's sentence—when he has served less than half of it—would undermine the goals of sentencing.

8

> And I reject the notion that Gotti is no longer a threat to the community. The danger posed by a Gambino Family leader like Gotti is not that he will personally engage in acts of violence, but that he can command others to do so. As Judge Casey noted at sentencing: "Bosses don't commit violence themselves, they have subordinates to do their bidding." (Tr. Sentencing 24:1–9). Judge Casey's finding that "the public will be best protected from the defendant by putting him in jail for a very long time" remains true today. (*Id.* 24:7–13).

*United States v. Peter Gotti*, 02 CR 743-07 (CM), Doc. No. 435 at 10. And what I said a year ago remains true today. Nothing has changed since last January—not even the threat of COVID-19—to cause this Court to alter its earlier decision.

The renewed motion for compassionate release is denied.

Dated: December 28, 2020

_____
Colleen McMahon
Chief Judge

9